IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v.                             ) | CASE NO. 6:23CR00012-1 |
| ) | |
| JOSE MIGUEL MARRERO,   ) | |
| ) | |
| Defendant.         ) | |

## SENTENCING MEMORANDUM

COMES NOW Defendant Jose Miguel Marrero, by and through his counsel of record, and files this Sentencing Memorandum as follows:

On August 3, 2023, Marrero was charged in a multi-count Indictment along with one other individual. He was charged as follows:

Count 1: Engaging in the Business without a License (Firearms) pursuant to 18 U.S.C. § 922(a)(1)(A);

Count 2: Transferring a Firearm to an Out-of-State Resident pursuant to 18 U.S.C. § 922(a)(5);

Count 3: False Statement During Purchase of a Firearm pursuant to 18 U.S.C. § 922(a)(6);

Count 4: Straw Purchase of a Firearm pursuant to 18 U.S.C. § 932;

Count 5: Firearms Trafficking pursuant to 18 U.S.C. § 933; and

Count 6: Aiding and Abetting pursuant to 18 U.S.C. § 2.

On August 17, 2023, Marrero appeared before the Honorable Brian K. Epps for an initial appearance and arraignment. Judge Epps released Marrero on a $25,000 secured bond with pretrial supervision. In the 9 months Marrero has been on bond, he has complied with all terms and conditions of his pretrial supervision.

On January 17, 2024, Marrero appeared before this Court and entered a plea of guilty to Count 3 of the Indictment which charged Marrero with giving a false statement during purchase of a firearm. Marrero does not have any objections to the criminal history category or offense level calculation prepared by the United States Probation Office as set forth in the Presentence Investigation Report.

Based on a lack of any criminal history, Marrero has a Criminal History Category of I (Marrero has 0 criminal history points). The total offense level for the crime in this case along with all relevant conduct and acceptance of responsibility is 20. Pursuant to the United States Sentencing Guidelines (U.S.S.G.) Chapter 5, Part A, the guideline range for imprisonment is 33-41 months. The Government will be recommending a sentence of 24 months.

Marrero respectfully requests that this Court sentence him to a period of probation.

## DEFENDANT'S ARGUMENT

In support of his position in regards to sentence, Marrero shows the Court the following:

This Court has a duty to accurately calculate and consider the Guidelines, and must also consider other factors under 18 U.S.C. § 3553(a) in arriving at a reasonable sentence than is no greater than necessary.

In <u>United States v. Booker</u>, 125 S.Ct. 738 (2005), the Supreme Court held that the mandatory guideline system created by the Sentencing Reform Act of 1984 (SRA) was unconstitutional. The appropriate remedial measure required the severance and excision of two provisions of the federal sentencing statute, including 18 U.S.C. § 3553(b)(1), the provision that made the Guidelines mandatory. See <u>Booker</u>, 125 S.Ct. at 757 (2005)(Breyer, J.). As a consequence, the federal sentencing statute still "requires a sentencing court to consider Guideline ranges, ... but it permits the court to tailor the sentence in light of other statutory concerns as well." <u>Id</u>. Treating the Guidelines as advisory requires that the Court consider the guideline range calculation as merely one factor in determining a sentence *no greater than necessary to achieve the goals of sentencing* as set forth in § 3553 (a)(2).

3

### A.  The § 3553(a) Sentencing Mandate

Section 3553(a) is comprised of two distinct parts: the "sentencing mandate" contained in the prefatory clause of § 3553(a) and the "factors" to be considered in fulfilling that mandate. The overriding principle and basic mandate of § 3553(a) requires district courts to impose a sentence "sufficient, but not greater than necessary," to comply with the four purposes of sentencing set forth in § 3553(a)(2): retribution, deterrence, incapacitation, and rehabilitation.

The sufficient but not greater than necessary requirement is often referred to as the "parsimony provision." The parsimony provision is not just another "factor" to be considered along with the others set forth in § 3553(a). This provision sets an independent limit on the sentence a court may impose. See Gall v. United States, 128 S.Ct. 586, 597 n.6 (2007); Kimbrough v. United States, 128 S.Ct. 558, 570 (2007); United States v. Denardi, 892 F.2d 269, 276-77 (3rd Cir. 1989); United States v. Ferguson, 456 F.3d 660, 667 (6th Cir. 2006)(the parsimony provision serves as "the guidepost for sentencing decisions post-Booker."). Since § 3553(a) requires a sentence to be no greater than necessary to meet the four purposes of sentencing, imposition of any sentence greater than necessary to meet those purposes is reversible, even if within the guideline range. Id.

4

In determining the sentence minimally sufficient to comply with the § 3553(a)(2) purposes of sentencing, the court must consider several factors listed in § 3553(a). Neither the statute itself nor Booker suggests that any one of these factors is to be given greater weight than any other factor. However, it is important to remember that all factors are subservient to § 3553(a)'s mandate to impose a sentence not greater than necessary to comply with the four purposes of sentencing.

This Circuit has agreed that the Guidelines must be considered, and that other factors under § 3553(a) must be used to determine the appropriate sentence. United States v. Talley, 431 F.3d 784, 786 (11th Cir. 2005); United States v. Stratton, 519 F.3d 1305 (11th Cir. 2008). However, in determining whether a sentence is "reasonable" under Booker, a sentencing court should defer to § 3553(a) and consider all relevant factors in determining the type of sentence that satisfies the sentencing mandate. Id. Furthermore, the record must demonstrate that the trial court gave meaningful consideration to the § 3553(a) factors. See Gall, *supra*.

After Booker, when sentencing a defendant, a district court must consider all sentencing factors enumerated in 18 U.S.C. § 3553(a). Those factors include:

5

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed -

    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B) to afford adequate deterrence to criminal conduct;

    (C) to protect the public from further crimes of the defendant; and

    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the advisory guideline range;

(5) any pertinent policy statements issued by the Sentencing Commission;

(6) the need to avoid unwarranted sentence disparities; and

(7) the need to provide restitution of the victims of the offense.

In this case, the application of the § 3553(a) factors to the facts of this case warrants that this Court impose a sentence below the advisory guideline range.

**B.     Offense Conduct**

In December 2022, the Bureau of Alcohol, Tobacco, Firearms and Explosives began an investigation in New York wherein a firearm was traced back to Bulloch County, Georgia. The investigation revealed that the original purchaser of the firearm was Jose Miguel Marrero. Further investigation revealed that Marrero had purchased 17 firearms from legal firearms dealers in Bulloch County, Georgia, between February 14, 2022, and December 13, 2022.

Before, during, and after the commission of this crime, Marrero lived with his mother, who is also his co-defendant. Marrero's mother exerts considerable control over Marrero. For example, she once went to his place of employment to demand she be given his paycheck. The money he earns is taken by his mother who then spends those funds as she sees fit.

Marrero's mother "drafted" him into the scheme that resulted in the commission of this crime. She was the individual who introduced Marrero to Tony Terry who offered Marrero money in exchange for Marrero purchasing guns for him. Marrero never personally received any monetary compensation for purchasing firearms for Tony Terry.

With regard to the actual purchase of the firearms by Marrero, Tony Terry would give Marrero money for the purchases and he would tell Marrero which

7

firearms to purchase. Marrero's mother would also accompany Marrero and Terry to the store when Marrero would purchase firearms.

While Marrero is an adult who has agency over his choices, it is clear that his involvement was largely due to pressure from his mother.

### C.     Marrero's Criminal History

Marrero has absolutely no criminal history of any description. Unfortunately, Marrero is not eligible for a 2 point offense level adjustment for zero-point offenders because his crime involved a firearm. If Marrero did receive the 2 point under the newly created § 4C1.1, his guideline range would be reduced to 27-33 months. It is important to note that while Marrero's offense did involve a firearm, he did not use a firearm while in commission of any other crime.

### D.     Marrero's Military Service

According to § 5H1.11, military service may be relevant in determining whether a departure is warranted.

Marrero began his military service in the United States Army on March 1, 2016 as an infantryman. He was honorably discharged as an E4 (corporal) on June 20, 2019, having completed his full term of service. While serving in the Army, Marrero received the following decorations/commendations: Army good conduct medal, national defense service medal, global war on terrorism service medal,

Afghanistan campaign medal with campaign star, Army service ribbon, NATO medal, and a combat infantryman badge.

During his military service, Marrero was deployed to Afghanistan for a period of 5.5 months. He participated in day and night patrols and duty as a tower guard. During the patrols, Marrero and his fellow soldiers routinely encountered improvised explosive devices and live fire from enemy combatants.

### E. Marrero's Mental Health

According to § 5H1.3, mental and emotional conditions may be relevant in determining whether a departure is warranted.

Marrero suffers from PTSD which surfaced as a result of his military service. His symptoms were manageable prior to the beginning of this case. However, during a meeting with counsel on October 12, 2023, Marrero began expressing suicidal thoughts. Counsel personally transported Marrero to the hospital to seek medical care. Marrero was admitted to the hospital that day and was then transferred to an in-patient mental health facility where he stayed for approximately 9 days. Marrero was diagnosed with anxiety and depressed mood with psychosis. Following his stabilization, Marrero was discharged and was able to return to work. Marrero was prescribed certain mental health medications, but he has not been able to afford them.

### F. Defendant's Character & Other Factors

Marrero has been on bond since August 17, 2023. In the 9 months Marrero has been on bond, he has complied with all terms and conditions of his pretrial supervision and demonstrated that he can exist as a law abiding citizen in this community.

Marrero has a strong work history having been employed in various jobs since his discharge from the military, most recently with Statesboro Logistics Solutions in Statesboro. All of Marrero's income goes towards supporting the household in which he lives, including his adopted younger brother. At times, Marrero has been the only employed individual in the household. Marrero is a dedicated employee who rides his bicycle to work every day. His employer has described him as an "excellent employee".

Marrero has never been incarcerated except for a very brief time in jail when he was arrested for the instant offense. Any term of incarceration will have a tremendous impact on him and his family as he will lose his employment and the ability to support his family.

### G. Marrero's Request for Sentencing

Any sentence of incarceration will have an extraordinary impact on Marrero and his family. Any sentence of incarceration will result in a loss of employment

and the ability to support himself and his family. Unlike many who appear before this Court, Marrero has not been incarcerated in the past, so any term of incarceration will have an impact more significant for him than for those with past periods of incarceration.

The Court is authorized to impose a sentence of probation. Marrero respectfully requests that he be sentenced to probation.

In the alternative, Marrero requests that the Court impose a sentence of home confinement.

This 17th day of May, 2024.

Respectfully submitted,

**s/ Matthew K. Hube, Esq.**
Matthew K. Hube, Esq.
Georgia Bar Number 373595
Attorney for Defendant
The Hube Law Firm, P.C.
14 Oak Street
Statesboro, GA 30458
(912) 764-2400

May 17, 2024

Kent Munsey
Statesboro, Ga.

Honorable Randy Hall
Southern District of Georgia
Statesboro, Ga.

Honorable Judge Hall,

I am ex - law enforcement officer and retired from the profession after 20 years of service in 2016. I was employed by the Bulloch County Sheriff's Office and served as a task force agent for the Drug Enforcement Administration in the Southern District of Georgia for 10 of those years. I am currently the Plant Manager for Crider LLC ( Statesboro Logistics Solutions) located in Statesboro, Georgia. I have known Mr. Jose Marrero for nearly 1 ½ years while he has worked for the company. Mr. Marrero first came to the company a temporary employee through a staffing agency but was quickly hired to a full time position after noticing his work ethic.

I learned of Mr. Marrero's Federal case through his own disclosure. He came to my office and explained the charges pending against him. He further advised me of the actions that he had taken that brought these particular charges against him. Mr. Marrero was extremely candid with me and did not leave out any details. I believe he came to me due to the fact that I am former law enforcement officer who is very familiar with the Federal system. I did advise Mr. Marrero to always tell his lawyer the truth and to be honest while in court. I do feel that Mr. Marrero is in a position of terrible circumstances where most mothers would never lead their son.

Mr. Marrero has been an above average employee which has been demonstrated through his attendance record. Mr. Marrero has missed very few days while employed with the company and only due to excused absences. Mr. Marrero has become a vital team member and a proven leader in the production room. There is not a position that he can not fill or excel in. Mr. Marrero comes in early and stays late whenever asked to do so without issue. Mr. Marrero is considered a top tier production employee within our company. I personally trust Mr. Marrero to the point that he has been to my residence to help lay sod on the weekends. I am also aware of him working at other employees residences' on the weekend just to make extra money. I would like to note that Mr. Marrero rides his

bike to work rain or shine, hot or cold.  Mr. Marrero is so well liked by other employees that they got together and gave him a motorized bike to makes his travel faster.

Since the beginning of Mr. Marrero's case I have been in communication with his attorney Matt Hube to help in any way possible.  I have also met with his probation officer, Travis Gauthreaux, on one occasion at the plant.  I advised the Mr. Gauthreaux that if he needed to meet with Mr. Marrero at any time he was welcome to come inside and utilize my office. Mr.  Marrero is good person your Honor and the day he leaves your  courtroom or prison, he will have a full time job with this company.  I appreciate you taking time to read this your Honor.

Respectfully,

Kent D. Munsey
Plant Manager
Statesboro Logistics Solutions
912-536-6773



May 17, 2024

To whom it may concern:

I am writing this letter on behalf of one of our company's employee's, Jose Marreno. Jose has been employed full time at our company since July 23, 2023. Prior to his full time employment, he worked for us as a temporary employee for approximately 13 weeks.

Jose is one of our best employees. He is dependable, productive, and honest. He has missed one day of work since he has worked for the company. He cares about his work and he cares about the people he works with. In short, he has a work ethic that we crave in the employment sector.

Additionally, on several occasions I have hired Jose to assist me at my home in Statesboro. He works hard, both inside and outside my home, and I would trust him in my home even if I was not there. Whenever he works for me personally at my home I always take him for a good lunch. It is obvious when I do that he is not used to having restaurant quality food. I know that his pay each week goes to his mother to pay for the lodging where they stay. And, for lunch he consistently has Ramen noodles. I do worry about what he gets to eat.

Which brings me to the crux of my letter: I understand that Jose made a serious mistake some time ago in regards to a purchase of a firearm(s) and that he is facing a serious prison sentence. It is also my understanding that trusted family members made this request of him to make this purchase. Trusting his family, he did what they asked of him and now he is the one that is at risk to pay the price.

<u>Honestly, this breaks my heart.</u>

Jose is a good person who has served our country in the Military. He works Full Time. He rides a bicycle to work rain or shine. .He is a productive member of society and someone I trust. And, let me say this... there is a certain innocence to

Jose. I would say he is at best of average intelligence. I do not mean that in a negative or insulting manner. It's just that with his innocent nature and trust in family members I can see how this happened. I feel that he has family members that take advantage of him regularly, but it is difficult to counsel him against family.

I'm hopeful that the court will take these comments to heart. I feel that if Jose was placed into the prison system he will not fare well. I'm not even sure he would survive. He is a good human being who made a foolish mistake. I hope for his sake we will not destroy his life because of it.

Thank you sincerely for hearing me out. I appreciate your time and please, feel free to reach out to me with my questions or comments at any time. I would do almost anything to help Jose through this.

Best regards,

Jim Warren
President and General Manager
Claxton Cold Storage
Statesboro Logistics Solutions
Cell: 912-334-0224

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v.   ) | CASE NO. 6:23CR00012-1 |
| ) | |
| JOSE MIGUEL MARRERO, ) | |
| ) | |
| Defendant.   ) | |

## CERTIFICATE OF SERVICE

This is the certify that I have on this day served all the parties in this case in accordance with the notice of electronic filing ("NEF") which was generated as a result of electronic filing in this Court.

This 17th day of May, 2024.

                                                /s/ Matthew K. Hube
                                                Matthew K. Hube
                                                State Bar No. 373595
                                                Attorney for Defendant

The Hube Law Firm, P.C.
14 Oak Street
Statesboro, GA 30458
(912) 764-2400

12